UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GABRIELLE MCGRADY,

             Plaintiff,

      v.                                                    21-CV-702-LJV
                                                          DECISION & ORDER

NEW YORK STATE, *et al*.,

             Defendants.

_____


       On June 3, 2021, the *pro se* plaintiff, Gabrielle McGrady, commenced this action under 42 U.S.C. § 1983 alleging that New York State, the State University of New York, Genesee Community College ("GCC"), and several GCC faculty members violated her rights to equal protection and due process.  Docket Item 1.  On September 30, 2021, GCC; the Clinical Educational Coordinator for GCC's Respiratory Care Program, Amy Provenzo; GCC's Director of Respiratory Care, Maureen Welch; GCC's Dean of Students, Patty Chaya; and GCC's Dean of Math, Science, and Career Education, Dr. Rafael Alicea-Maldonado, (collectively, the "GCC defendants") moved to dismiss the claims against them.  Docket Item 9.  After two extensions of time, *see* Docket Items 14, 16, McGrady responded on March 15, 2022.  Docket Item 17.  About three weeks later, the GCC defendants replied.  Docket Item 18.

       For the following reasons, the GCC defendants' motion to dismiss will be granted unless McGrady amends her complaint to correct the deficiencies noted below.

# FACTUAL BACKGROUND[1]

McGrady was a student in the Respiratory Care Program at GCC from late 2018 until October 2020.  Docket Item 1 at 4; Docket Item 9-5 at 2, 5.  The Respiratory Care Program consists of four semesters; students participate in clinical rotations during the third and fourth semesters.  Docket Item 17 at 4.  During her third semester, McGrady was assigned rotations at two clinical sites: Rochester General Hospital ("Rochester General") and Sisters of Charity Hospital ("Sisters").  *Id.*  McGrady completed her

---

[1] On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  McGrady's compliant itself is sparse, *see* Docket Item 1, but she offers further allegations in her response, *see* Docket Item 17.  Normally, a court "will not consider [ ] factual allegations raised for the first time in a brief in opposition to a motion to dismiss."  *Harrell v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2019 WL 3817190, at *2 n.3 (S.D.N.Y. Aug. 14, 2019).  Because McGrady is proceeding *pro se*, however, the Court considers those allegations. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (submissions of *pro se* litigants must be construed liberally and interpreted to raise the strongest arguments that they suggest).

The Court also may consider any "documents . . . in [the] plaintiff['s] possession or of which [the] plaintiff[ ] had knowledge and relied on in bringing suit," *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993), as well as any written documents that are attached to a complaint, incorporated by reference, or integral to it, *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).  Here, McGrady attached her amended New York State Division of Human Rights ("NYSDHR") administrative complaint, *see* Docket Item 1 at 10-11, and the NYSDHR determination of no probable cause, *see id.* at 7-9, to her complaint, and she refers to the NYSDHR proceedings and "emails and other writings" that the defendants "created" after her dismissal from GCC, *see* Docket Item 17 at 2-3.  The GCC defendants attached several documents to their motion to dismiss, and those documents appear to be those to which McGrady refers, including McGrady's initial NYSDHR complaint, *see* Docket Item 9-2, McGrady's response in the NYSDHR proceedings, *see* Docket Item 9-5 at 2-27, and "emails" that were sent to McGrady before and after her dismissal, *see* Docket Item 9-3 at 9-16.  The Court therefore considers all those documents—that is, the NYSDHR amended complaint, the NYSDHR complaint, McGrady's response in the NYSDHR proceedings, the NYSDHR determination of no probable cause, and the emails sent to McGrady—on the motion to dismiss.

rotation at Rochester General and began her rotation at Sisters.  *Id.*  But in October

2020, before McGrady could complete her Sisters rotation, GCC dismissed McGrady

from the program.  *Id.*

   The dismissal process began on October 14, 2020, when Provenzo emailed

McGrady and asked her to meet to discuss concerns about McGrady's performance at

Rochester General and Sisters.  Docket Item 9-5 at 5; *see* Docket Item 9-3 at 9.  Five

days later, on "[McGrady's] second to last day of [her] clinical rotation at Sisters,"

McGrady met with Provenzo, Welch, and Chaya regarding "adverse" performance

issues and McGrady's "underperformance" in her clinical rotations.  Docket Item 17 at 4;

Docket Item 9-5 at 5.  "After that meeting[,] [McGrady] was dismissed from the

program," Docket Item 17 at 4, and she suspects that her dismissal was due to the GCC

defendants' "personal feelings" about her, Docket Item 1 at 4.  McGrady appealed her

decision to Alicea-Maldonado, who sustained the decision to dismiss McGrady.  Docket

Item 9-3 at 13.  The GCC defendants "created" documents after the meeting to

"support[] their decision to dismiss [McGrady]."  Docket Item 17 at 3.

   During the dismissal proceedings, McGrady "was not given an opportunity to

present the merits of her case," Docket Item 1 at 4, or "to present [her] own evidence,"

Docket Item 17 at 3.  The GCC defendants, on the other hand, "presented false

evidence . . . that was not memorialized at the time of the incident."  Docket Item 1 at 4.

What is more, the GCC Student Handbook "entitle[d] [McGrady] to . . . process before

dismissal," Docket Item 17 at 3, and the GCC defendants did not follow proper "policy

an[d] procedure" in dismissing her from the program, Docket Item 1 at 4.

Before the dismissal, McGrady did not receive any "write[-]up or any type of disciplinary action."  Docket Item 17 at 4.  And other than in the meeting with Provenzo, Welch, and Chaya, McGrady "was never notified of any wrongdoing, insufficient performance[,] or failures to follow protocol, policies[,] and procedures."  *Id.* at 3.  On the contrary, the feedback McGrady received from her professors was positive.  In fact, McGrady completed "weekly journals" about her clinical rotations, and her professors responded with positive comments.  *See id.* at 4; Docket Item 9-5 at 13-17.

The dismissal letter, sent to McGrady on October 26, 2020, details the GCC defendants' proffered reasons for dismissing McGrady.  *See* Docket Item 9-3 at 13-16. The letter states that McGrady was dismissed for arriving late to her clinical site, being absent from her clinical rotation without an excuse, failing to notify a clinical site that she would be late or absent, behaving unprofessionally, taking extended breaks, and following unsafe practices in patient care.  *See id.*  When she was dismissed from the program, McGrady also had criminal charges pending against her.  Docket Item 17 at 5-6.

After McGrady's dismissal from the Respiratory Care Program, she filed a complaint with the NYSDHR alleging that the GCC defendants discriminated against her because of race and sex.  Docket Item 1 at 10 (amended NYSDHR complaint); Docket Item 9-2 at 2-4 (NYSDHR complaint).

## **LEGAL PRINCIPLES**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

4

570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## **DISCUSSION**

## I.    **PROCEDURAL DUE PROCESS CLAIM**

McGrady argues that the GCC defendants violated her right to procedural due process under the Fourteen Amendment.[2]  *See* Docket Item 17 at 3-5.  To state a claim for denial of procedural due process, a plaintiff must allege that (1) she was deprived of a "liberty" or "property" interest, *see Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 571 (1972); and (2) the process provided to her was constitutionally inadequate, *see Zinermon,* 494 U.S. at 126.

---

[2] In the complaint, McGrady also asserts that the defendants violated her "substantive due process" rights.  *See, e.g.*, Docket Item 1 at 4 (alleging that she was "not given an opportunity to present the merits of her case within the proceedings which affected the fundamental fa[i]rness and substantive due process rights").  But a claim about the fairness of the *procedures* used to deny a property right sounds in procedural, not substantive, due process.  *See Wolff v. State Univ. of N.Y. Coll. at Cortland*, 2016 WL 9022503, at *16 (N.D.N.Y. Feb. 5, 2016), *aff'd sub nom.*, 678 F. App'x 4 (2d Cir. 2017) (Procedural due process protects against "the deprivation by government action of a constitutionally protected interest without sufficient procedural safeguards, such as a hearing" whereas as substantive due process protects against "certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990))).  Because McGrady complains about the fairness of the procedures used to dismiss her, she asserts that her right to procedural due process, not substantive due process, was abridged.

New York law recognizes "an 'implied contract' between [a college or university] and its students," which requires the "academic institution [to] act in good faith in its dealing with its students."  *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) (alterations in original) (quoting *Olsson v. Bd. of Higher Educ.,* 49 N.Y.2d 408, 414, 402 N.E.2d 1150, 1153 (1980)).  "Such an implied contract"—that is, one "recognized under state law"—gives rise to a property interest "entitled to constitutional protection."  *Id.*  So McGrady has a property interest in her dealings with GCC, and she therefore has stated the first element of a procedural due process claim.

The amount of process that a student is owed before dismissal from a college or university depends on whether the dismissal "was disciplinary or academic in nature." *Sutton v. Stony Brook Univ.*, 2020 WL 6532937, at *15 (E.D.N.Y. Nov. 5, 2020).  In the context of an academic dismissal, a student is afforded adequate process "where (1) the school has 'fully informed [the student] of the faculty's dissatisfaction with [the student's] progress and the danger that this posed to timely graduation and continued enrollment,' and (2) '[t]he ultimate decision to dismiss [the student] was careful and deliberate.'"  *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 191 (2d Cir. 2015) (alterations in original) (quoting *Bd. of Curators of Univ. of Mo. v. Horowitz,* 435 U.S. 78, 85 (1978)).

A student dismissed for disciplinary reasons, however, is entitled greater process.  *See id.* (noting that the procedural requirements for academic dismissals are "far less stringent" than those required for disciplinary dismissals).  Disciplinary dismissals require that the student receive "oral or written notice of the charges against [her] and, if [s]he denies them, an explanation of the evidence the authorities have and

an opportunity to present h[er] side of the story." *Horowitz*, 435 U.S. at 85 (quoting *Goss v. Lopez*, 419 U.S. 565, 581 (1975)).  But even disciplinary dismissals do not require that a school provide the student with a formal hearing before dismissal; rather, an "informal give-and-take" between the student and the school that "give[s] the student 'the opportunity to characterize h[er] conduct and put it in what [s]he deems the proper context'" is sufficient.  *Id.* at 85-86 (quoting *Goss*, 419 U.S. at 584).

McGrady's response does not address whether she claims that her dismissal was based on academic or disciplinary reasons.  *See* Docket Item 17.  And the GCC defendants' papers also are unclear on that point.  *Compare* Docket Item 9-9 (GCC defendants' memorandum of law) at 8 (characterizing McGrady's dismissal as "academic"), *with* Docket Item 18 (GCC defendants' reply memorandum of law) at 5 (characterizing McGrady's dismissal as based on "issues [that] were behavioral in nature[,] not academic").  That confusion is understandable because "the line between academic and disciplinary decisions is not always clear."  *See Wolff*, 2016 WL 9022503, at *17.

"[C]ourts have considered a dismissal to be 'academic' where the rationale has to do with the student's deficiency in the skills necessary in school or in the career for which the school is training [her], including lack of professionalism."  *Id.* (collecting cases); *see also Knapik v. Mary Hitchcock Mem'l Hosp.*, 90 F. Supp. 3d 292, 300-01 (D. Vt. 2015) ("For the purposes of judicial review . . . 'academic' decisions encompass ethics and professionalism" if those qualities are "an essential part" of the student's training.).  Disciplinary dismissals, on the other hand, typically involve "the violation by a

student of valid rules of conduct."  *Wolff*, 2016 WL 9022503, at *17 (citing *Horowitz*, 435 U.S. at 86-90).

Here, McGrady's dismissal was academic in nature.  The Respiratory Care Program in which she was enrolled includes clinical rotations during the "third and fourth semesters," Docket Item 17 at 4, and McGrady's dismissal was based on alleged performance concerns and professionalism issues at her clinical sites.  The October 26 dismissal letter states that McGrady was dismissed because of performance issues at the clinical sites, including an unexcused absence, tardiness, failure to follow protocol, professionalism concerns, and extended breaks.  Docket Item 9-3 at 13-16.  McGrady herself alleges that Chaya, Provenzo, and Welch raised concerns about McGrady's "adverse [and] underperformance issues" at the meeting with her.  Docket Item 17 at 4. Additionally, Provenzo's email arranging that meeting states that she wanted to meet with McGrady to discuss "consistent negative feedback" about McGrady's "performance and behaviors" at the two clinical sites, including failing to show up for a scheduled clinical session.  Docket Item 9-3 at 9.

Other courts have found similar dismissals for professionalism concerns to be academic rather than disciplinary.  *See, e.g.*, *Sutton*, 2020 WL 6532937, at *15 (finding dismissal of student to be for academic reasons when based on "issues with her preparedness, lateness, professionalism, and performance reviews" at her student teaching site); *Knapik*, 90 F. Supp. 3d at 301 (finding dismissal of resident for ethics and professionalism concerns to be for academic reasons because ethics and professionalism "are an essential part of a resident's training"); *Al-Dabagh v. Case W.*

*Rsrv. Univ.*, 777 F.3d 355, 360 (6th Cir. 2015) (collecting cases).  McGrady's dismissal from the Respiratory Care Program therefore was for academic reasons.

Given the academic nature of her dismissal, McGrady was entitled only to notice and a "careful and deliberate" decision.  *See Dean*, 804 F.3d at 191.  McGrady's own allegations suggest that she received both.  Although she alleges that she was not "notified of any wrongdoing, insufficient performances[,] or failures to follow protocol, policies[,] and procedures as they arose," Docket Item 17 at 3, McGrady also says that at a meeting with Chaya, Provenzo, and Welch, she was notified of "underperformance issues" and that "[she] was dismissed" afterwards, *see id.* at 4.  In fact, a short time after the meeting, McGrady was formally notified of her dismissal from the program by e-mail, and that e-mail included the specific reasons for her dismissal.  Docket Item 9-3 at 13-16; Docket Item 9-5 at 5.  McGrady also appealed the dismissal decision to Alicea-Maldonado, who spoke with McGrady by phone, and on October 26, 2020, sent an email stating that he affirmed the dismissal "after examining the information related to [McGrady's] appeal."  Docket Item 9-3 at 13.

Even though McGrady's account of her dismissal therefore suggests that she received adequate process, she says that process was not enough.  For example, McGrady complains that she did not receive "a write[-]up or any type of disciplinary action" before her meeting with Chaya, Provenzo, and Welch.  Docket Item 17 at 4.  In other words, McGrady seems to believe that she was entitled to formal, written notice before that meeting.  But due process does not require formal, written notice for academic dismissals; instead, a school need only "fully inform[]" a student of the

prospect of dismissal.[3]  *See Dean*, 804 F.3d at 191.  And while McGrady complains about the form of the notice she received, she does not allege that she did not get notice of the prospect of dismissal at the meeting with Chaya, Provenzo, and Welch. *See* Docket Item 17 at 3-4.

McGrady also argues that she was denied due process because she was dismissed from the Respiratory Care Program without "an opportunity at a formal or . . . informal hearing . . . to present [her] own evidence and be heard."  Docket Item 17 at 3. But academic dismissals do not require a hearing, *see Horowitz*, 435 U.S. at 85 n.3 ("[A] hearing is not required by the Due Process Clause of the Fourteenth Amendment."); instead, a "careful and deliberate" ultimate decision is all that is required, *see Dean*, 804 F.3d at 191.[4]  As explained above, McGrady was dismissed only after she first met with Chaya, who was the Dean of Students, and two of her professors, Welch and Provenzo, and then had a conversation with Alicea-Maldonado about the dismissal and the

---

[3] Even if McGrady's dismissal were properly characterized as disciplinary, she still would not be entitled to receive formal, written notice from the school.  Indeed, notice of disciplinary charges may be "oral *or* written."  *See Horowitz*, 435 U.S. at 85 (emphasis added).  And, again, McGrady has not alleged that she did not receive notice of her potential dismissal and the alleged reasons for it at the meeting with Chaya, Provenzo, and Welch.

[4] In fact, even disciplinary dismissals do not require a formal hearing.  *See Horowitz*, 435 U.S. at 85-86.  An "informal give-and-take" between the student and the school that permits a student to "put [her conduct] in . . . the proper context" is enough. *See id.*  Here, McGrady does not allege she did not have an opportunity to "put [her conduct] in . . . the proper context" at her two meetings with school administration. Rather, her allegations focus on the lack of an "administrative hearing," *see* Docket Item 17 at 5, or some other hearing at which she could "present [her] own evidence," *see id.* at 3.  But for the reasons just stated, such formal procedures are not required. McGrady's allegation that she did not receive a formal hearing therefore fails to state a procedural due process claim regardless of how her dismissal is characterized.

reasons for it.[5]  In other words, McGrady does not allege any facts from which the Court

can infer that the school was not "careful and deliberate" in its ultimate decision to

dismiss her.

In sum, procedural due process requires that a student dismissed for academic

reasons be "fully informed" about the prospective dismissal and that "[t]he ultimate

decision to dismiss [the student] [be] careful and deliberate."  *Dean*, 804 F.3d at 191.

Because McGrady has not plausibly alleged that she was deprived of either

requirement, she fails to state a viable procedural due process claim.[6]

---

[5] Although McGrady alleges that the GCC defendants "presented false evidence" during the proceedings and that she "was not given an opportunity to present the merits of her case," Docket Item 1 at 4, she does not plead any facts about what evidence was false and what she wanted to, but could not, share during her dismissal proceedings. Those conclusory allegations alone are not enough to raise a procedural due process claim, especially when McGrady's other allegations suggest that she was given an opportunity to be heard.  *See Mamatkulov v. City Univ. of N.Y.*, 2022 WL 2392433, at *4 (S.D.N.Y. July 1, 2022) (plaintiff's conclusory allegation that he was "not given a chance to be heard and . . . did not get fair treatment" failed to state a procedural due process claim).

[6] McGrady also asserts that the GCC defendants did not follow proper "policy an[d] procedure" in dismissing her from the program.  Docket Item 1 at 4.  Presumably, McGrady is referring to policies in the GCC Student Handbook that she claims "entitle[d] [her] to a process before dismissal."  *See* Docket Item 17 at 3.  "[N]ot every deviation from a contractual grievance procedure, no matter how trivial, constitutes a deprivation of constitutional due process."  *Robie v. Obst*, 2015 WL 4208639, at *7 (W.D.N.Y July 9, 2015).  More specifically, "[a]lleged deviations that do not affect the fundamental fairness of a hearing do not rise to constitutional proportions."  *Id.* (citing *Winnick v. Manning*, 460 F.2d 545, 550 (2d Cir.1972)).  Beyond her conclusory allegation that the GCC defendants did not follow "policy an[d] procedure," McGrady does not explain what policy or procedure the handbook required but was not given, nor does she elaborate on how those deviations affected the "fundamental fairness" of her dismissal proceedings.  McGrady's allegation that the GCC defendants deviated from "policy an[d] procedure" therefore does not plausibly raise a due process claim.

## II.     EQUAL PROTECTION CLAIM

McGrady also argues that the GCC defendants violated her right to equal protection.  Docket Item 17 at 6.  The complaint offers little detail on McGrady's equal protection claim, but her NYSDHR complaint alleged that the GCC defendants discriminated against her because of her race and sex.  *See* Docket Item 1 at 10; Docket Item 9-2 at 4.  In her response to the motion to dismiss, McGrady appears to abandon her claims that she suffered discrimination because of her sex or race; instead, she now asserts that the GCC defendants discriminated against her for a different reason—because of her pending criminal case.  *See* Docket Item 17 at 5-6 ("I believe [that] the defendants abruptly dismissed me from the program when they were informed by the United States Attorney['s] Office and federal law enforcement that I was criminally charged with a federal crime . . . .").

"The Equal Protection Clause protects individuals from invidious discrimination." *Trowell v. Theodarakis*, 2018 WL 3233140, at *3 (D. Conn. July 2, 2018).  "It does not mandate identical treatment for each individual or group of individuals." *Id.*   Instead, it requires that "all persons similarly situated . . . be treated alike."  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  "To prove an equal protection violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class."  *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted).

"Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class," courts also recognize equal protection claims by "individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials."

*Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).  "This category of equal protection violation is commonly known as a 'class[-]of[-]one' claim."  *Abreu v. Farley*, 2019 WL 1230778, at *27 (W.D.N.Y. Mar. 15, 2019) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, (2000)).  "When a plaintiff alleges an equal protection violation (without also alleging discrimination based upon membership in a protected class), the plaintiff must plausibly allege that he or she has been intentionally treated differently from others similarly situated and no rational basis exists for that different treatment."  *Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018).  "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."  *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).

McGrady appears to have abandoned her claims based on membership in a protected class,[7] and she therefore does not state a "prototypical" equal protection claim.  *See Harlen Assocs.*, 273 F.3d at 499.  She also has not alleged a viable "class-of-one" claim because she alleges no facts showing that she was "similarly situated" to any other student who was treated differently.  In fact, McGrady does not identify any comparators at all.  *See MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 371 (E.D.N.Y. 2010) (dismissing equal protection claim because "the [c]omplaint does

---

[7] To the extent McGrady continues to allege that she was discriminated against because of sex or race, the complaint fails to state a claim that McGrady experienced such discrimination.  McGrady offers little more than conclusory allegations of discrimination because of race or gender.  *See, e.g.*, Docket Item 9-3 at 4; Docket Item 17 at 2-3.  That is not enough to state an equal protection claim.  *See McMillan v. Togus Reg'l Off., Dep't of Veterans Affs.*, 120 F. App'x 849, 852 (2d Cir. 2005) (summary order) ("Conclusory allegations of racial [or sex-based] discrimination are insufficient to maintain a § 1983 action." (citing *Graham v. Henderson,* 89 F.3d 75, 79, 82 (2d Cir.1996))).

not identify any comparators or similarly situated entities at all").  Because McGrady has

not stated a "prototypical" or a "class-of-one" equal protection claim, she does not

plausibly allege an equal protection violation.[8]

### III.   LEAVE TO AMEND

In McGrady's response, she asks for leave to amend her complaint.  Docket Item

17 at 1.  Because leave to amend should be "freely given" whenever a complaint is

dismissed, *see McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007),

and because "courts should generally not dismiss a *pro se* complaint without granting

the plaintiff leave to amend," *see Shibeshi v. City Univ. of N.Y.*, 531 F. App'x 135, 136

(2d Cir. 2013) (summary order), McGrady may file an amended complaint, within 45

days, that corrects the deficiencies noted above.

McGrady is advised that an amended complaint is intended to ***completely***

***replace*** the prior complaint in the action and thus "renders [any prior complaint] of no

legal effect."  *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)*; see also*

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  Therefore, any

amended complaint ***must include all allegations against each of the defendants***,

that is, each of the GCC defendants, as well as defendants New York State and State

---

[8] The GCC defendants also argue that McGrady's equal protection and due process claims should be dismissed because McGrady does not allege how Provenzo, Welch, and Chaya were personally involved in McGrady's dismissal and that those defendants are entitled to qualified immunity.  Docket Item 9-9 at 15-17.  Furthermore, in their motion to dismiss, the GCC defendants argue that McGrady should be collaterally estopped from asserting her claims here because the NYSDHR administrative proceeding provided a "full and fair opportunity [for McGrady] to litigate her claim."  *Id.* at 17-18.  Because the Court finds that McGrady fails to state an equal protection or due process claim for other reasons, it does not reach the GCC defendants' other arguments.

University of New York, so that the amended complaint stands alone as the only complaint that the defendants must answer in this action.

## CONCLUSION

For the reasons stated above, the GCC defendants' motion to dismiss, Docket Item 9, will be granted unless McGrady amends her complaint, within 45 days, to correct the deficiencies noted above.  No later than 30 days after any amended complaint is filed, the defendants may answer, move against, or otherwise respond to the amended complaint.  If McGrady does not file an amended complaint within 45 days, her claims against the GCC defendants will be dismissed, and the Clerk of the Court shall terminate GCC, Provenzo, Welch, Chaya, and Alicea-Maldonado as defendants without further order.

The Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore denies leave to appeal as a poor person.  *Coppedge v. United States,* 369 U.S. 438 (1962).


SO ORDERED.

Dated:   July 29, 2022
         Buffalo, New York


                              */s/ Lawrence J. Vilardo*
                              LAWRENCE J. VILARDO
                              UNITED STATES DISTRICT JUDGE

15