UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GABRIELLE MCGRADY,

        Plaintiff,

    v.                                     21-CV-702-LJV
                                                  DECISION & ORDER

NEW YORK STATE, *et al.*,

        Defendants.

---

On June 3, 2021, the *pro se* plaintiff, Gabrielle McGrady, commenced this action under 42 U.S.C. § 1983. Docket Item 1. She alleges that the State University of New York ("SUNY"), Genesee Community College ("GCC"), and several GCC faculty members[1] violated her rights to procedural due process and equal protection.[2] *Id.*; Docket Item 24 (amended complaint). After several defendants—GCC; Amy Provenzo, the Clinical Educational Coordinator for GCC's Respiratory Care Program; Maureen Welch, GCC's Director of Respiratory Care; Patty Chaya, GCC's Dean of Students; and Dr. Rafael Alicea-Maldonado, GCC's Dean of Math, Science, and Career Education (collectively, the "GCC defendants")—moved to dismiss the claims against them, Docket Item 9, this Court found that those claims were subject to dismissal but gave

---

[1] The original complaint included New York State as a defendant, Docket Item 1 at 1-2, but the amended complaint does not, *see generally* Docket Item 24.

[2] The amended complaint invokes several other purported bases for this action. *See* Docket Item 24 at ¶ 1 (referencing the Commerce Clause, the Supremacy Clause, and the Declaratory Judgment Act); *id.* at ¶ 6 (referencing substantive due process). Because those provisions are not relevant to McGrady's allegations and McGrady does not explain her bases for invoking them, any claims asserted under them are dismissed.

McGrady leave to amend her complaint, Docket Item 21, which she did, Docket Item 24.[3]

The GCC defendants then moved to dismiss the amended complaint. Docket Item 28; see Docket Item 30. McGrady did not respond to the second motion to dismiss, so on April 25, 2023, this Court ordered her to show cause why it should not decide the motion based only on the GCC defendants' papers. Docket Item 32. McGrady did not respond to that order, and the time to do so has passed. See id. The Court therefore decides the pending motion based on the papers now before it.

For the reasons that follow, the GCC defendants' second motion to dismiss is granted.

## **BACKGROUND**[4]

From late 2018 until October 2020, McGrady was a student in GCC's Respiratory Care Program training to be a respiratory therapist. Docket Item 24 at ¶¶ 6, 8; see id. at

---

[3] On October 12, 2021, the summons for SUNY was returned unexecuted, Docket Item 12, and SUNY apparently still has not been served. Accordingly, McGrady shall show cause within 30 days of the date of this order why her claim against SUNY should not be dismissed based on her failure to timely effect service. See Fed. R. Civ. P. 4(m).

[4] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt., 843 F.3d 561, 566 (2d Cir. 2016). The Court may consider any written documents that are attached to a complaint, incorporated by reference, or integral to it. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

McGrady attached her amended New York State Division of Human Rights ("NYSDHR") administrative complaint and the NYSDHR determination of no probable cause to her original complaint. See Docket Item 1 at 10-11 (amended NYSDHR complaint); id. at 7-9 (NYSDHR determination). And the GCC defendants attached McGrady's initial NYSDHR complaint to the second motion to dismiss. Docket Item 28-

¶ 20.  The Respiratory Care Program consists of four semesters, and students participate in clinical rotations during their third and fourth semesters.  *Id.* at ¶ 9.  "During her third semester, [McGrady] was assigned rotations at two clinical sites": Rochester General Hospital ("Rochester General") and Sisters of Charity Hospital ("Sisters").  *Id.*  In October 2020, after McGrady completed her rotation at Rochester General and began her rotation at Sisters, GCC dismissed her from the Respiratory Care Program.  *Id.* at ¶ 10.

Several days before the dismissal, "Provenzo had emailed [McGrady] and asked her to meet to discuss concerns about [McGrady's] performance at Rochester General and Sisters."  *Id.* at ¶ 11.  Five days later, on or around October 20, 2020, McGrady met with Provenzo, Welch, and Chaya "regarding alleged 'adverse' performance issues and [McGrady's] alleged 'underperformance' in her clinical rotations."  *Id.*  More specifically, Provenzo, Welch, and Chaya raised concerns about McGrady's "tardiness, unexcused absences, [and] failure to follow protocol."  *Id.* at ¶ 24.  Sometime after the meeting, McGrady "was dismissed from the program."  *Id.* at ¶ 11.

But the performance issues cited by the defendants were a pretext for McGrady's dismissal, which "was actually the result of certain . . . defendants' 'personal feelings' about [McGrady]," *id.* at ¶ 12, including racial animus because McGrady is Black, *see id.* at ¶ 13.  In particular, Chaya called McGrady an "angry Black wom[a]n" and a "liar" and "made other degrading comments about [McGrady's] character."[5]  *Id.*  And during the

---

2.  Although McGrady did not attach those documents to her amended complaint, they are "integral" to the amended complaint and the Court therefore considers them.

[5] At some point before McGrady's dismissal, Chaya accused McGrady of "falsely stating" that she had graduated from another GCC program.  Docket Item 25 at ¶ 15.  Although McGrady "calm[ly]" responded to that accusation, Chaya later "accused

3

meeting on October 20, someone—although McGrady does not say who—said that "as a Black mother, [McGrady] was in need of counseling."  *Id.* at ¶ 15.

After the meeting, Provenzo, Welch, and Chaya "created" fake documents suggesting that McGrady's performance was subpar "to bolster their decision to dismiss" McGrady.  *Id.* at ¶ 14.  In reality, McGrady's performance was satisfactory[6] and she received positive feedback from her supervisors.  *See id.* at ¶¶ 14, 21(2).[7]  In fact, before October 20, 2020, McGrady had not received any warnings—verbal or written—about her conduct or performance.  *Id.* at ¶ 19.  And the specific instances of tardiness and unexcused absences cited during the October 20 meeting were factually inaccurate.  *Id.* at ¶¶ 24-26.

McGrady appealed the dismissal to Alicea-Maldonado, but he "sustained the decision to dismiss her."  *Id.* at ¶ 12.  And throughout the dismissal process, the defendants did not follow several procedures included in the GCC Student Handbook.  *Id.* at ¶¶ 22(2)-24(2).

After McGrady's dismissal from the Respiratory Care Program, she filed a complaint with the NYSDHR alleging that the GCC defendants discriminated against her

---

[McGrady] of lying" and said that McGrady had screamed at her.  *Id.*  But Chaya's claims were "unbelievable":  She said that McGrady had yelled "in a voicemail" and that Chaya had threatened to "hang up" even though a voicemail is not a "two-way conversation."  *Id.*

[6] It seems that at some point, McGrady failed a "lab practical," possibly resulting in her suspension or removal from the Respiratory Care Program.  *See* Docket Item 24 at ¶ 22.  But she was "allowed to return" to the program, showing that her performance otherwise was satisfactory.  *Id.* at ¶¶ 22-23.

[7] The amended complaint includes two sets of paragraphs labeled 21-26.  *See* Docket Item 24 at 9-12.  References to the second set of those paragraphs are denoted by a (2) following the paragraph number.

based on her race and sex. *See* Docket Item 1 at 10; Docket Item 28-2. The NYSDHR found "no probable cause to support the allegations of the complaint." Docket Item 1 at 7-8.

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

### I. PROCEDURAL DUE PROCESS

McGrady alleges that the defendants deprived her of procedural due process when they dismissed her from the Respiratory Care Program. Docket Item 24 at ¶¶ 17, 26(2). The GCC defendants argue that the procedural due process claims against them must be dismissed because McGrady's dismissal from the program "met the requirements of due process." Docket Item 28-9 at 9-17.

To state a claim for denial of procedural due process, a plaintiff must allege that (1) she was deprived of a "liberty" or "property" interest, *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571 (1972); and (2) the process provided to her was constitutionally

5

inadequate, *Zinermon v. Burch*, 494 U.S. 113, 126 (1990).  In the context of an academic dismissal,[8] a student is afforded adequate process "where (1) the school has 'fully informed the student of the faculty's dissatisfaction with the student's progress and the danger that this posed to timely graduation and continued enrollment,' and (2) 'the ultimate decision to dismiss the student was careful and deliberate.'"  *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 191 (2d Cir. 2015) (alterations omitted) (quoting *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 85 (1978)).

This Court previously concluded that "McGrady ha[d] a property interest in her dealings with GCC," satisfying the first element of a procedural due process claim.  Docket Item 21 at 6.  But it also found that McGrady had not plausibly alleged the second element of a procedural due process claim: that the process provided to her was constitutionally inadequate.  *Id.* at 9-11.  In fact, the Court determined that the allegations in the original complaint "suggest[ed]" that McGrady received both notice and a "careful and deliberate" decision regarding her dismissal.  *Id.* at 9.

In the amended complaint, McGrady asserts that "she was not given adequate notice and a careful and deliberate decision or a meaningful opportunity to challenge [her dismissal] at a fair hearing."  Docket Item 24 at ¶ 17.  But for the most part, the amended complaint repeats the allegations in the original complaint.  For example, McGrady again alleges that she did not receive a formal write-up of any performance issues; that she was dismissed after a meeting with Provenzo, Welch, and Chaya; and that she appealed her dismissal to Alicea-Maldonado.  And McGrady again alleges that

---

[8] This Court previously determined that McGrady's dismissal was academic rather than disciplinary.  *See* Docket Item 21 at 8-9.

6

the notice she received was insufficient and that she did not have a chance to challenge the allegations about her conduct in a hearing.  For the reasons this Court previously explained, those allegations do not raise a viable due process claim.  *See* Docket Item 21 at 9-10 (noting that "due process does not require formal, written notice" or "a hearing" for academic dismissals and that McGrady "does not allege that she did not get notice of the prospect of dismissal at the meeting with Chaya, Provenzo, and Welch").

The amended complaint raises two other purported bases for McGrady's procedural due process claim.  First, McGrady asserts that she "was not given an opportunity to challenge" the allegedly false evidence presented against her.  Docket Item 24 at ¶ 26.  But while she provides more information about the allegedly false evidence, *id.* at ¶ 15, that information still cannot sustain her claim because McGrady has not plausibly alleged facts showing that she was denied the opportunity to challenge that evidence.[9]  For example, she does not say that she could not speak during the meeting with Provenzo, Welch, and Chaya or that she could not challenge the evidence during her appeal to Alicea-Maldonado.

In other words, McGrady has asserted only the conclusion that she was not given the opportunity to challenge the allegedly false evidence.  And the facts she alleges—a meeting with Provenzo, Welch, and Chaya and an appeal to Alicea-Maldonado—belie that conclusory assertion.  McGrady therefore has not plausibly alleged that she was denied an opportunity to "put [her conduct] in . . . the proper context," as is required to

---

[9] While McGrady suggests that she was not able to challenge Chaya's allegation that McGrady had yelled at her because that allegation was "never supported by any written documentation," she admits that she received an email including that allegation.  Docket Item 24 at ¶ 15.  This Court does not see why McGrady could not challenge the allegation set forth in the email.

7

sustain a due process challenge to an academic dismissal. *See* Docket Item 21 at 10 n.4 (quoting *Horowitz*, 435 U.S. at 85-86).

McGrady also alleges that her dismissal violated several provisions of the GCC Student Handbook. Docket Item 24 at ¶¶ 22(2)-24(2). But "not every deviation from a contractual grievance procedure, no matter how trivial, constitutes a deprivation of constitutional due process." *Robie v. Obst*, 2015 WL 4208639, at *7 (W.D.N.Y. July 9, 2015). More specifically, "[a]lleged deviations that do not affect the fundamental fairness of a hearing do not rise to constitutional proportions." *Id.* (citing *Winnick v. Manning*, 460 F.2d 545, 550 (2d Cir. 1972)).

McGrady says that the defendants failed to follow three dismissal procedures in the GCC Student Handbook. First, McGrady says that the Handbook states that "'gross errors' in judgment and/or practice will constitute grounds for dismissal" and that she "was never informed of any such gross errors." Docket Item 24 at ¶ 22(2). Second, McGrady says that the Handbook requires students who are "asked to leave a clinical rotation and not return" to "write a memorandum of explanation and meet with the clinical coordinator," but that this "procedure was never followed" with respect to her dismissal. *Id.* at ¶ 23(2). Third, McGrady says that the Handbook provides that a dismissed student "may continue to go to class" while the appeal of her dismissal is pending but that she was not permitted to do so. *See id.* at ¶ 24(2).

None of those allegations suggest that the defendants deviated from the GCC Student Handbook in a manner that affected the fundamental fairness of McGrady's dismissal. First, the Handbook language regarding "gross errors" says nothing about a notice or hearing requirement; rather, it says only that "gross errors in judgment and/or

8

practice will constitute grounds for dismissal from the program." See Docket Item 18-2 at 28.[10]  So the fact that McGrady was not given advance notice of such errors was not a violation of any Handbook procedure requirement.  Second, while McGrady may not have written a memorandum of explanation regarding her dismissal as provided in the Handbook, she met with Provenzo, the Clinical Educational Coordinator, as required.  And McGrady does not explain why her own written explanation for her dismissal would be essential to the fairness of her dismissal.  Finally, while McGrady may have preferred to attend classes while her appeal was pending, this Court does not see how not attending classes affected her dismissal—or, indeed, how prohibiting her from attending classes was fundamentally unfair when the dismissal ultimately was sustained.[11]

So McGrady has not plausibly alleged that the defendants' failure to follow the procedures in the GCC Student Handbook was fundamentally unfair or denied her the process to which she was entitled.  Cf. Robie, 2015 WL4208639, at *7 (allegations of "numerous failures to abide by the appropriate grievance procedures, particularly with respect to the timing of the presentation of charges and evidence," did not "undermine[] the fundamental fairness of the proceedings"); Brown v. W. Conn. State Univ., 204 F. Supp. 2d 355, 366 (D. Conn. 2002) (fundamental fairness not affected by failure to

---

[10] The GCC defendants submitted a copy of the Student Handbook earlier in this litigation.  Docket Item 18-2; see Docket Item 18-1.  Because the amended complaint references the Handbook, see Docket Item 24 at ¶¶ 22(2)-24(2), this Court considers the Handbook in resolving the motion to dismiss, see Sira, 380 F.3d at 67.

[11] While it cannot say for certain, the Court assumes that students challenging dismissals are allowed to attend class as a safety-guard:  If a dismissal is reversed on appeal, a student who has continued attending classes has not lost any class time.  Here, McGrady's dismissal was sustained on appeal, so she did not lose anything by not attending classes during her appeal.

9

record appeal hearing as required by student handbook); *Turof v. Kibbee*, 527 F. Supp. 880, 885 (E.D.N.Y. 1981) (fundamental fairness not affected where plaintiff received full hearing on allegations against him despite defendants' failure to afford pre-hearing conference required by college by-laws).

In sum, and as this Court held previously,

> McGrady was dismissed only after she first met with Chaya, who was the Dean of Students, and two of her professors, Welch and Provenzo, and then had a conversation with Alicea-Maldonado about the dismissal and the reasons for it. In other words, McGrady does not allege any facts from which the Court can infer that the school was not "careful and deliberate" in its ultimate decision to dismiss her.

Docket Item 21 at 10-11 (footnote omitted). The allegations raised in the amended complaint do not change that analysis. McGrady therefore has not stated a viable procedural due process claim against the GCC defendants, and that claim is dismissed.

## II. EQUAL PROTECTION

While McGrady does not invoke the Equal Protection Clause in her amended complaint, *see generally* Docket Item 24, the Court construes McGrady's allegations that Chaya commented on her race as raising an equal protection claim. As the defendants argue, however, that claim is barred by the doctrine of collateral estoppel because "the facts which form the basis for [McGrady's] claims have already been reviewed and dismissed by the NYSDHR." *See* Docket Item 28-9 at 17-18.

Collateral estoppel "bars litigation of an issue when (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013) (citation and internal

quotation marks omitted).  "[W]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts."[12]  *Saunders v. N.Y. Convention Ctr. Operating Corp.*, 2021 WL 4340793, at *11 (S.D.N.Y. Sept. 23, 2021) (alterations and internal quotation marks omitted) (quoting *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986)); *see id.* ("In New York, 'courts give quasi-judicial administrative fact-finding preclusive effect where there has been a full and fair opportunity to litigate.'" (quoting *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 310 (2d Cir. 2005))).

"The burden of proving identity of the issue rests on the proponent of collateral estoppel, while the opponent bears the burden of proving that he or she did not have a full and fair opportunity to litigate the issue."  *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 730 (2d Cir. 2001) (citation omitted); *see Johnson v. County of Nassau*, 411 F. Supp. 2d 171, 183 (E.D.N.Y. 2006) (finding that NYSDHR determination of no probable cause collaterally estopped plaintiff's claim because plaintiff "ha[d] not met his burden of establishing that he did not have a full and fair

---

[12] The Court observes that while administrative proceedings may result in collateral estoppel of a section 1983 claim, *see Kirkland v. City of Peekskill*, 828 F.2d 104, 107-08 (2d Cir. 1987) ("[A] state agency's resolution of factual issues adverse to the complainant [may] bar a federal court action brought under [section 1983]."), that is not the case for other types of claims, *see Thomas v. Contoocook Valley Sch. Dist.*, 150 F.3d 31, 39 n.5 (1st Cir. 1998) ("The Supreme Court has explicitly held that Congress intended to displace federal common-law rules of preclusion in actions brought pursuant to Title VII [of the Civil Rights Act of 1964] and the [Age Discrimination in Employment Act of 1967], and, thus, judicially unreviewed state agency determinations are not entitled to preclusive effect in actions brought pursuant to those statutes.").

opportunity to litigate the issued of [the defendant's] alleged discrimination and retaliation before the NYSDHR").

### A. Identity of Issues

The GCC defendants argue that because McGrady's NYSDHR complaint and her equal protection claim share a "factual predicate," there is an identity of the issues between the two. Docket Item 28-9 at 18. They are correct: The NYSDHR investigated McGrady's claim that she was discriminated against based on her race and gender—the same bases for her equal protection claim—and found no probable cause to support those claims. Docket Item 1 at 7-8; *see id.* ("[The defendants have] articulated a legitimate non-discriminatory business reason for dismissing [McGrady] from [the] Respiratory Care [P]rogram, which was not shown to be a pretext for racial or sex discrimination."). The GCC defendants therefore have met their burden of showing that the issue McGrady raises now was raised in a previous proceeding, that the issue was actually decided, and that the resolution of the issue was necessary to the NYSDHR proceedings. *See Proctor*, 715 F.3d at 414. In other words, they have established identity of the issues.

### B. Full and Fair Opportunity to Litigate

To determine whether a party had a full and fair opportunity to litigate an issue in an administrative proceeding, a court considers "whether the procedures used in the administrative proceeding assured that the information presented to the agency w[as] sufficient . . . to permit confidence that the facts asserted were adequately tested, and that the issue was fully aired." *Kosakow*, 274 F.3d at 734 (citation omitted). Factors relevant to that analysis include "the forum of the prior litigation, . . . the extent of the

litigation, the competence and experience of counsel, the availability of new evidence [after the close of the prior proceedings], . . . and foreseeability of future litigation." *Id.* (citation omitted). "It should be remembered that the burden is upon [McGrady] to prove that she did not have a full and fair opportunity to litigate her claims in the [NYS]DHR proceeding." *See id.* at 733-43 (citation omitted).

Here, the GCC defendants submitted several documents related to the NYSDHR proceeding, including (1) GCC's response to McGrady's NYSDHR complaint, Docket Item 28-3; (2) McGrady's reply to GCC's response, Docket Item 28-5; (3) a report by the NYSDHR investigator describing an interview she conducted with McGrady, Docket Item 28-6; and (4) some of GCC's correspondence with the investigator, Docket Item 28-7, including copies of documents providing feedback about McGrady's clinical performance, Docket Item 28-8.[13] They contend that those documents establish that McGrady had "opportunity to present evidence to the NYSDHR [i]nvestigator" and "fully participated in the proceedings before the NYSDHR," including by "submit[ing] a rebuttal and ha[ving] a personal interview." Docket Item 28-9 at 18.

McGrady has not responded to the second motion to dismiss, *see* Docket Item 32, and thus has not argued that she did not have an adequate opportunity to litigate the facts underlying her discrimination claims before the NYSDHR. Nevertheless, the Court notes that McGrady's *pro se* status weighs against applying collateral estoppel. *See Kosakow*, 274 F.3d at 735-36 (concluding that *pro se* plaintiff may not have "understood that the determinations made by the [NYS]DHR would prevent her from

---

[13] The Court considers those documents because they are "integral" to the claims raised in the amended complaint. *See Sira*, 380 F.3d at 67.

litigating the same issues in federal court" or "known what facts were most relevant or persuasive in proving her case").  And the Court therefore takes a closer look at whether it would be unfair to apply collateral estoppel against the *pro se* plaintiff here.

For several reasons, the Court concludes that it would not be.  First, McGrady had the same "ability [and] motivation to litigate the specific issue" of the defendants' allegedly discriminatory conduct before the NYSDHR as she has before this Court.  *See id.* at 735 (emphasis omitted); *cf. id.* (noting that in an administrative proceeding, the plaintiff "did not even attempt to disprove [the defendant's] contention that it had legitimate financial reasons for terminating some employees").  Second, "it does not appear that any new evidence became available to [McGrady] after her [NYS]DHR complaint was dismissed," *see id.* at 734; in fact, she relied on the same facts in both proceedings.  Third, while McGrady may not have been given an administrative hearing "wherein she could confront the witnesses against her," *see id.* at 735 (noting that the lack of a "full hearing" is "not dispositive"), she had an opportunity to speak with the NYSDHR investigator and address the defendants' assertions that she was dismissed for performance-related reasons, *see* Docket Item 28-6.

Based on those factors—and upon McGrady's failure to make any argument to the contrary—this Court concludes that McGrady has not carried her burden of showing that she was denied a full and fair opportunity to litigate her discrimination claims in front of the NYSDHR, even in light of her *pro se* status.  The GCC defendants therefore have satisfied the requirements of collateral estoppel, which bars McGrady's equal protection claim.

**CONCLUSION**

For the reasons stated above, the GCC defendants' second motion to dismiss, Docket Item 28, is GRANTED. The Clerk of the Court shall terminate GCC, Provenzo, Welch, Chaya, and Alicea-Maldonado as defendants.

Additionally, **within 30 days of the date of this order**, McGrady shall show cause why SUNY should not be dismissed from this action based on McGrady's failure to timely effect service. She may do so by showing "good cause" for her failure to effect service and requesting an extension. If McGrady does not respond to this order within 30 days, her claims against SUNY will be dismissed without prejudice under Federal Rule of Civil Procedure 4(m), and the Clerk of the Court shall close this case without further order.

The Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). McGrady must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:   January 23, 2024
         Buffalo, New York


                                               ***/s/ Lawrence J. Vilardo***
                                               LAWRENCE J. VILARDO
                                               UNITED STATES DISTRICT JUDGE